City of McKeesport, Petitioner v. Pennsylvania Public Utility Commission,, Respondent, Borough of Versailles, Intervenor.

Argued February 4, 1982, before President Judge CRUMLISH, JR. and Judges ROGERS and DOYLE, sitting as a panel of three.

*Steven F. Kessler*, for petitioner.

*Daniel P. Delaney*, Assistant Counsel, with him *Joseph J. Malatesta, Jr.*, Deputy Chief Counsel, for respondent.

*Arnold V. Plum, Plum & Booth*, for Intervenor.

OPINION BY JUDGE ROGERS, March 5, 1982:

The City of McKeesport has filed a petition for review of an order of the Pennsylvania Public Utility Commission entered October 29, 1979 requiring it to refund $22,255.22 with interest to the Borough of Versailles on account of overcharges for water supplied Versailles during 1977. The water rates charged Versailles were not submitted for approval to the PUC

and the refund represented the difference between the amount charged and the last PUC-approved McKeesport tariff of charges made for water it supplied to customers beyond the city limits.

McKeesport concedes that at the time the water charges in question were required it, McKeesport, owned its waterworks. Versailles is of course located beyond McKeesport's corporate limits so that McKeesport was subject to PUC regulation.

But McKeesport adopted a home rule charter on January 1, 1976. It contends that as a home rule charter municipality it is exempted or immune from PUC regulation and could charge what it pleases for its water. Other than stating the proposition, McKeesport provides no authority for its thesis that the PUC's regulatory jurisdiction for extraterritorial services provided by municipally owned utilities is not preserved by Section 302(c) of the Home Rule Charter and Optional Plans Law, Act of April 13, 1972, *as amended,* 53 P.S. §1-302(c) providing that Acts of the General Assembly which are uniform and applicable throughout the Commonwealth shall remain in effect and not be changed by the Home Rule Charter and Optional Plans Law and by Section 302(b)(ii), 53 P.S. §1-302(b)(ii) providing that no municipality shall exercise any power contrary to powers granted by Acts of the General Assembly which are applicable in every part of the Commonwealth. It is too clear for serious argument to the contrary that the Public Utility Law, Act of May 28, 1937, *as amended,* P.L. 1053 was, and that the present Public Utility Code enacted July 1, 1978, at 66 Pa. C.S. §101 *et seq.* is, applicable in every part of the Commonwealth and that McKeesport in increasing its water rates to Versailles without PUC approval was attempting to exercise power not conferred on it by the Home Rule Charter and Optional Plans Law. *See Duquesne Light Company v. The*

*Borough of Monroeville*, 449 Pa. 573, 298 A.2d 252 (1972); *Commonwealth v. Delaware & Hudson Railway Corporation*, 19 Pa. Commonwealth Ct. 59, 339 A.2d 155 (1959).

Further, it would seem that McKeesport was barred by the doctrine of res judicata from raising a defense based on its status as a home rule charter municipality in this complaint proceedings initiated by Versailles. The identical issue was briefed, considered at length and reviewed by an Administrative Law Judge whose decision was adopted by the Commission by order entered October 21, 1977, which was not appealed. This first order upheld the PUC's regulatory jurisdiction and enjoined McKeesport from charging rates other than those in PUC-approved tariffs. Versailles' instant complaint proceeding seeking a refund culminated in the order of October 29, 1979. In response to Versailles' contention that McKeesport is barred by res judicata from raising the same defense in this proceeding, McKeesport says that res judicata is not applicable to decisions of administrative agencies. In *Philadelphia Electric Co. v. Pennsylvania Public Utility Commission*, 61 Pa. Commonwealth Ct. 325, 433 A.2d 620 (1981) we held, that the use of the doctrine of res judicata in administrative proceedings is proper when the reasons for the uses of the rule in court proceedings are present in full force. They are certainly present in full force here.

McKeesport's further contention that Versailles, not having appealed from the Commission's order of October 21, 1977, was powerless to institute a later complaint proceeding for refund, is without merit. Section 1312 of the Public Utility Code, 66 Pa. C.S. §1312 provides that if the PUC shall determine that a rate change is in violation of law, it shall have the power to order refund of any excess rates paid within four years prior to the date of filing the complaint for re-

fund. Under the statutory scheme, it is not necessary that the refund be ordered in the case challenging the lawfulness of rates and indeed it is clearly envisioned that there should first be an order determining the unlawfulness of rates followed by a complaint seeking refunds.

Order affirmed.

## ORDER

AND Now, this 5th day of March, 1982, the order of the Pennsylvania Public Utility Commission entered October 29, 1979 is affirmed.