553 A.2d 455

**CLEARFIELD BANK & TRUST COMPANY, Trustee of the Estate of John Beyer, Deceased, and GRC Coal Company, Appellees,**

v.

**David B. SHAFFER and Gloria A. Shaffer, Appellants.**

Superior Court of Pennsylvania.

Argued Oct. 26, 1988.

Filed Jan. 30, 1989.

William C. Kriner, Clearfield, for appellants.

Henry R. Pope, III, Clarion, for appellees.

Before OLSZEWSKI, DEL SOLE and KELLY, JJ.

DEL SOLE, Judge:

This is an appeal by David and Gloria Shaffer, of a decree entered on a petition by Clearfield Bank and Trust Company [Clearfield], and G.R.C. Coal Company [G.R.C.] praying for a declaratory judgment. The petition sought an interpretation of a deed between Clearfield and the Shaffers, and a determination whether or not G.R.C. should be allowed to strip mine the surface of the land described in the deed without the consent of the Shaffers.

The deed in question conveyed all the surface rights in 441.5 acres situated in Clearfield County from Clearfield to the Shaffers, and, most crucially, excepted and reserved all the mineral rights and the rights to mine those minerals, by "opening the surface and the removing the same by drilling, pumping, deep mining, *strip mining,* auger mining or other generally used commercial methods without liability for

damages to the surface and improvements thereon or the water, thereon, therein or thereunder." (emphasis added) Clearfield entered into a coal lease with G.R.C. to strip mine and remove the coal on the land described in the deed.

By memorandum and decree the trial court stated, "it is hereby decreed that under this Court's interpretation of the deed in question the Respondents have no right to interfere with the rights of Petitioners to extract the coal from the subject property by the strip mining method."

On appeal, the Shaffers first claim that the trial court erred in exercising jurisdiction over this declaratory judgment proceeding. Appellants cite the Declaratory Judgment Act [Act] 42 Pa.C.S.A. § 7541(c)(2), which states, "relief shall not be available under this subchapter with respect to any proceeding within the exclusive jurisdiction of a tribunal other than a court." Appellants claim that the Department of Environmental Protection [DER] has exclusive jurisdiction over this matter, and that the trial court's jurisdiction is precluded by the Surface Mining Conservation and Reclamation Act, [SMCRA], which states in part, "Except as otherwise provided hereunder, ... all surface mining operations coming within the provisions of this act shall be under the exclusive jurisdiction of the department ..." 52 Pa.S.A. § 1396.4b. Appellants state that the administrative process of licensing and overseeing strip mining is undercut when the issue of consent of the surface owner to the strip-mining operation is committed to the courts, rather than the agency, for resolution.

However, in construing the deed between the Shaffers and Clearfield, the court only declared the rights of the owners of the surface rights and the owners of the mineral rights under that deed, and did not undercut the process of licensing and overseeing the operation of strip mining. The trial court did not decide, nor prejudice, the DER's future decision whether to license GRC's mining operation, nor did it prejudice the outcome of any of the dozens of disputes which might arise between the regulatory agency and the

operators of the strip mine, which are indeed issues committed to the exclusive jurisdiction of the DER.

Next, Appellants argue that the lower court exceeded the limitations of the Declaratory Judgment Act. Under the Act, "courts shall have the power to declare rights, status and other legal relations whether or not further relief is or could be claimed." 42 Pa.C.S.A. § 7532. Furthermore, the Act expressly states that, "Any person interested under a *deed,* will, written contract ..., may have determined any question of construction or validity arising under the instrument, or ... contract, and obtain a declaration of rights, status, or other legal relations thereunder." 42 Pa.C.S.A. § 7533 [emphasis added].

As this court has stated, "Declaratory judgments are nothing more than judicial searchlights, switched on in the behest of a litigant to illuminate an existing legal right, status or other relation." *Doe v. Johns–Manville Corporation,* 324 Pa.Super. 469, 473, 471 A.2d 1252 (1984). These proceedings may not be used to search out new legal doctrines which would contravene settled law in Pennsylvania, *Id.,* nor may they be used to prejudge issues that are committed for initial resolution to an administrative forum. *Commonwealth, Department of General Services v. Frank Briscoe Co., Inc.,* 502 Pa. 449, 466 A.2d 1336 (1983). If declaratory judgments are used for such purposes then the trial court can be said to have exceeded the limitations of the Act.

No such abuse of the Act has occurred here. The use of the Act to interpret the deed in question does not render it a vehicle for changing the law, as it did in *Johns–Manville, supra.,* at 324 Pa.Super. at 473, 471 A.2d at 1254, where the petitioner attempted to have the court declare that the statute of limitations on an asbestos related disease does not run until the injured is actually disabled, rather than, as was the law at the time, when the injury is discovered. Here the declaratory judgment neither undermines DER regulations nor changes settled property law. Rather, it

interprets the document under existing law and attempts to define legal relationships under the deed.

Furthermore, the issues involved, unlike those in *Briscoe,* are not committed for initial resolution to an administrative forum such that a declaratory judgment concerning the rights of the parties under the deed will result in the issues being prejudged. In *Briscoe,* the petitioner for declaratory relief was the Commonwealth's Department of General Services, who as a party to a contract with several construction contractors sought to have its contractual obligations, fixed by the Commonwealth Court prior to having to defend against these same contractors in the Board of Claims. In effect the petition, "was in reality simply an attempt to establish in advance the validity of an affirmative defense to be used to defeat the contractors' breach of contract actions." *Briscoe, supra.,* 502 Pa. at 459, 466 A.2d at 1340.

Here, unlike *Briscoe,* there is no present or future proceeding contemplated between Clearfield and the Shaffers which is initially committed to the DER's administrative resolution. The issue of whether Clearfield's licensee, G.R.C., needs the Shaffers' permission to go on the land does not fall within the definition of surface mining operations, which are under the DER's exclusive jurisdiction. Furthermore, this judgment will not fix or prejudge the parties' obligations under SMCRA concerning the operation of the strip-mine. Thus, Appellants' contention that the trial court's judgment effectively wipes out any protections SMCRA affords the owner of surface rights is without merit.

In a similar case before this court, *Woytek v. Benjamin Coal Co.,* 300 Pa.Super. 397, 446 A.2d 914 (1982), the appellant argued that the issue of whether it had complied with its obligations under a lease to restore strip-mined land should be raised before the DER and not in the courts. The court rejected this argument, stating that when the issue was whether Appellant had met its obligations under a lease, (which obligations were above and beyond those required by the DER), then it is for the courts, not the

administrative agency, to interpret the lease and decide if the Appellant met its obligations. *Id.*

Here, as in *Woytek*, the issue before the court was the extent of the rights and obligations of the parties to a written instrument. As this only tangentially involves the regulations of an administrative agency, it is not an abuse of the Act for the court to declare the Shaffers' obligations by interpreting this deed.

■ Finally, Appellants contend that the lower court erred in its interpretation of the deed in question. Specifically, they contend that the deed does not address the issue of consent to mine, and that the exception and reservation of coal was only for mining leases in existence at the time of the conveyance, which does not include the lease between G.R.C. and Clearfield Bank.

We agree with the trial court which rejected the latter claim that the exception and reservation of coal was only for mining leases in existence at the time of the conveyance in 1975. Rather, as the trial court stated, "it is apparent from the language of the deed, that the intention of the grantor in conveying the surface to the [Shaffers] was to be able to have the entire body of their coal mined and removed so that they could profit from it." (Memorandum and Decree, 9/10/84, at 3-4). The language of the exception and reservation clause is clear. By agreeing that Clearfield Bank could open the surface and remove the coal by strip mining without liability for damages to the surface or water systems, Appellants expressly agreed to waive their right to surface support, which, under settled law, is guaranteed to the owner of the surface. *Commonwealth v. Fisher*, 364 Pa. 422, 72 A.2d 568, 571 (1950). There being no limitations on the right to extract the minerals, G.R.C., as lessee of the mineral rights from Clearfield, had the right to strip-mine, and by clear implication, the right to go on the land and explore for coal by geophysical or other means.

Similarly, although there is nothing in the deed expressly stating that no permission or consent is required from the

surface owners prior to going on the land to mine or make preliminary exploratory drillings, by clear implication, no such consent is required. To conclude otherwise would render the exception and reservation clause unenforceable and effectively give the surface owners a veto power over the rights reserved to Clearfield and its assignees.

The decree of the trial court is affirmed.